PROVOSTY, J.
E. W. Hamiter, the defendant, is the son-in-law of the principal *119 plaintiff, Mrs. M. P. Busbey, and the brother-in-law of the other plaintiffs. He and his father-in-law, J. L. Busbey, husband of the plaintiff Mrs. Busbey, and father of the other plaintiffs, were partners in the grain and produce wholesale and retail business in the city of Shreveport. They transferred the business to a corporation composed of themselves and some straw men. Busbey died, leaving a will in which he bequeathed to his children a 50 per cent, interest in the corporation. The sole issue in the present case is as to whether this interest was 50 per cent., as stated in the will, or as contended by defendant, only 42 per cent.
■What interest each of the partners had in the partnership and in the corporation ought to appear by the books, but, as a matter of fact, does not, and there are no writings of any kind to show it, and no one except defendant himself is in a position to testify on the subject. 1-Ie says that, when he admitted his father-in-law as a partner into his business, an inventory was made of the business, showing $16,500 odd, and that the agreement between him and his father-in-law was that they were to be equal partners in the business, but that, on final settlement, he, defendant, should withdraw $16,000 from the assets before a division was made, and that the price of the transfer of the partnership business to the corporation was $100,000, and that'the agreement was that, when the stock of the corporation came to be issued, there should be issued to him $16,-000, and that the balance of $84,000 should be issued one-half to him and one-half to his father-in-law.
In the statement that an inventory was made, he is corroborated by the testimony of the bookkeeper, and by the inventory itself appearing on the books of the partnership.
Plaintiff further testified that the $16,-538.84 shown by this inventory was all his own; that his father-in-law had contributed nothing to his, defendant’s business before the formation of the partnership. He also testified that his father-in-law contributed nothing towards the capital of the partnership.
In contradiction of this, plaintiffs have produced some stubs of checks, showing cheeks made in favor of defendant, aggregating some $500, and have shown that, before the formation of the partnership, J. L. Busbey superintended the construction of the large brick building in which the partnership subsequently carried on its business; also, that he paid several pay rolls of the labor employed on this building.
Defendant explains the checks by saying that he was in the habit of cashing checks for his father-in-law; and says that he gave his father-in-law a check for $1,000 in reimbursement of the pay roll payments.
It is also shown that the partnership had use of three mules belonging to Busbey. This defendant admits.
The trial judge decided against defendant, owing, doubtless (he gave no written reasons), to the many improbabilities and gravely suspicious circumstances in the ease; and we have concluded, somewhat doubtfully as we must admit, to affirm his judgment. That these improbabilities and grounds for suspicion should exist may be defendant’s misfortune more than his fault, but they obtrude themselves forcibly upon the judicial mind, and stand stubbornly in the way of the .acceptance of defendant’s statement.
There is the probability so strong as to constitute the basis of a settled jurisprudence of the partners having had an equal interest (22 A. & E. E. 888; 30 Oyc. 445), which probability in the present case is greatly fortified by the fact shown by the books of the partnership that the partners were equal in the profits.
If the business of the defendant was as *121 prosperous as he says it was, so prosperous as to have shown a net gain of the difference between $16,538.84 (the amount of the inventory) and $2,301.84 (the amount with which he started in business) in the short space of time between March, 1902, when he started and July, 1903, the date of the inventory, some 17 months, and if his motive in taking his-father-in-law in as a partner was, as he says, that he needed more capital, and especially if, as he says, there was no agreement that his father-in-law should furnish his personal services to the firm, how very improbable that the father-in-law should not have been required to furnish some capital, especially that he was in financial position to have done so. True, the father-in-law did as a matter of fact give a good deal of his time and attention to the interests of the firm; but, according to defendant’s testimony, he was not bound to do so. The father-in-law was a builder and contractor, and had no experience in the line of business into which he was admitted as a partner. Here then, was defendant conducting a prosperous and growing business which he had himself started and built up, for which he needed more capital, taking his father-in-law, inexperienced in that line of business, as a full partner in the profits, without exacting of him any promise or obligation to contribute services, and yet receiving from him no contribution by way of capital.
There is, again, the improbability that Busbey, an intelligent and honest business man, in the full possession of all his faculties, should have disposed by last will of a half interest, if he had not believed he owned a half interest; and there is the extreme improbability that he should not have known, what interest he had.
Waiving minor improbabilities, we will mention in passing the statement made by one of the plaintiffs and contradicted by defendant, that defendant admitted to him that Busbey had contributed $3,500, and we will pass to the suspicious circumstances.
Chief among these is the testimony of the bookkeeper that, when Busbey lay sick and expected to die, defendant told him, witness, that he, defendant, would fix the books so that the trifling Busbey children should not have the benefit of the fruits of his, defendant’s, labors.
The defendant had possession of the books of the partnership, and one of the journals is missing. With reference to one of the pages of this missing journal the bookkeeper testified as follows:
“Q. Mr. Bates, in reference to the journal that you spoke of yesterday in your testimony that has been misplaced, I will ask you to state whether or not that journal showed the respective interest of each partner in the partnership?
“(Objected to by counsel for defendant.) He can testify what it showed.
“Q. Mr. Bates, what did that journal show?
“A. I can give you the wording of the entry on the journal: ‘We, Hamiter and Busbey, commence business this day with the following liabilities and resources,’ stating the liabilities on one side and resources on the other, ‘and agree to share the profits and losses equally.’ ”
Finally, it was proved, and, in fact, defendant admits, that he took out of the loose leaf ledger of the corporation the pages showing what property went to make up the corporation assets at the time of the transfer to the corporation.
There are other circumstances, but of minor importance, needless to be referred to.
Judgment affirmed.